## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL JONES, | ) | Case No. 1:22-cv-0039 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Thomas Parker |
| | ) | |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Crystal Jones injured her back and shoulder while performing duties related to her job as an equipment operator for the City of Cleveland.  The injuries left her unable to complete her duties without accommodations.  Ms. Jones requested accommodations twice, which the City denied both times.  Ms. Jones sued under the Americans with Disabilities Act, arguing that the City's denial of her requested accommodations amounts to disability discrimination and retaliation.  The City of Cleveland seeks a summary judgment.  For the reasons that follow, the City of Cleveland is entitled to judgment as a matter of law. Therefore, the Court **GRANTS** the motion.

## STATEMENT OF FACTS

In September 2001, Plaintiff Crystal Jones began working for the City of Cleveland as a Municipal Construction Equipment Operator ("MCEO-B").  (ECF No. 30, PageID #421–22.)  She worked in the Department of Public Works, Division of Waste, primarily at the Ridge Road Transfer Station.  (*Id.*, PageID #423; *id.*,

PageID #432–33.)    The position of municipal construction equipment operator requires a worker to perform excavation and grading work; transport equipment to and from job sites; load refuse and debris; maintain and repair equipment; and operate heavy machinery.  (ECF No. 30-1, PageID #634.)  Ms. Jones, describing the duties of her position in her own words said that she does "[w]hatever they tell me to do on equipment." (ECF No. 30, PageID #425.)  For example, Ms. Jones said she loads tractor trailers, tires, and waste materials, maintains and transports equipment, and "load[s] recycle."  (*Id.*)

### A.    Workplace Injuries

On March 12, 2018, while at work, a supervisor instructed Ms. Jones to clean an end loader with a firehose, which she had never used before.  (*Id.*, PageID #450–51.)  While lifting the firehose, Ms. Jones injured her back and shoulder.  (*Id.*, PageID #449–50.)  She went to the emergency room and subsequently followed up with Dr. James O'Reilly, who treated Ms. Jones's shoulder injuries.  (*Id.*, PageID #451–53.)  In late 2020, Ms. Jones underwent surgery on her shoulder.  (*Id.*)

### B.    Workers' Compensation Claim

Ms. Jones last worked in the MCEO-B position on the date of the incident, March 12, 2018.  (ECF No. 30, PageID #431.) Then, she filed a claim with the Bureau of Workers' Compensation.  (*See Id.*, PageID #530.)  The BWC approved her claim based on three medical conditions:  tears of the right rotator cuff, a lumbar sprain, and an unspecified sprain of the right shoulder.  (ECF No. 30-11, PageID #657.)  Ms.

Jones received payment on the claim from the BWC until the end of 2020.  (*See* ECF No. 30, PageID #597; ECF No. 30-2, PageID #635.)

On July 15, 2020, the BWC requested that Dr. Charles Prezzia examine Ms. Jones to determine whether she was still unable to return to work.  (ECF No. 30-11, PageID #657.)  Dr. Prezzia concluded that Ms. Jones had reached maximum medical improvement and that she was capable of returning to work.  (*Id.*, PageID #659–61.)  Based on Dr. Prezzia's report, the BWC ended worker's compensation payments to Ms. Jones.  (*See* ECF No. 30, PageID #597.)

On January 7, 2021, the City of Cleveland mailed Ms. Jones a letter informing her that, as a result of the BWC's determination, she should have returned to work by December 7, 2020.  (ECF No. 30-2, PageID #635.)  The letter provided Ms. Jones with four options:  (1) return to work immediately; (2) bid for another position for which she qualifies; (3) apply for disability retirement; or (4) apply for accommodations for her current job under the Americans with Disabilities Act.  (*Id.*)

## C.    First Request for Accommodation

Ms. Jones elected option four and sought accommodations for her current job.  On January 19, 2021, Ms. Jones applied to continue working as a municipal construction equipment operator with the City of Cleveland.  (ECF No. 30-3, PageID #641–44.)  On the application, Ms. Jones listed her disability as "limited use of right upper extremity and lower back disc pathology; left upper extremity injury."  (*Id.*, PageID #641.)  On Dr. O'Reilly's medical advice, she requested the following accommodations:  (1) a ladder or device to raise her into the machine; (2) machines

3

that have lever control systems instead of steering wheels; (3) an ergonomic seat; (4) assistance with mechanical duties; and (5) rest periods.  (*Id.*)

Consistent with its policies and procedures, the City convened an accommodation review committee to consider Ms. Jones's requests for accommodations.  (ECF No. 30-5, PageID #647.)  Monique Young headed the committee.  (ECF No. 25, PageID #164.)

The City contacted the City's equipment vendor and the director of public works to determine the feasibility of the accommodations that Ms. Jones requested. (ECF No. 24-1, PageID #130–35; *id.*, PageID #121.)  The vendor informed the City that neither the factory nor the dealer has a system capable of raising an operator into the cab of the loader other than the standard steps. (ECF No. 24-1, PageID #130.) Others voiced safety and logistical concerns with the potential use of a stepladder. (ECF No. 29, PageID #347–48.)  The vendor indicated that lever controls and an ergonomic seat could technically be made available, but others involved questioned the feasibility of these options because municipal construction equipment operators are expected to operate more than one particular piece of equipment.  (ECF No. 24-1, PageID #130*; id.*, PageID #121; ECF No. 29, PageID #349.)

Regarding Ms. Jones's final requested accommodation, assistance with maintenance duties, the director of public works, Michael Cox, informed the accommodation review committee that requiring transfer station attendants would require additional training and/or pay to those employees and that these additional costs "could be cost prohibitive and violate contractual agreements."  (ECF No. 24-1,

PageID #121.)  Specifically, an assistant law director for the City determined that requiring the assistance of other employees would violate the City's collective bargaining agreements by resulting in the assignment of work across different bargaining units.  (ECF No. 27, ¶ 14, PageID #273.)  Despite this determination, Ms. Jones reports having received regular assistance from members of other bargaining units in the past.  (ECF No. 30, PageID #560–61; ECF No. 35-2, ¶ 5, PageID #812–13.)

The accommodation review committee determined that the accommodations requested were "not reasonable and would constitute an undue hardship."  (ECF No. 30-5, PageID #647.)  By letter dated June 24, 2021, Ms. Jones was informed of the committee's decision.  (*Id.*)  That letter invited Ms. Jones to contact Young to find an alternative placement, submit a new request, or resubmit the original request with additional supporting information.  (*Id.*)

### D.  Second Request for Accommodation

On July 20, 2021, when Young had not heard back from Ms. Jones, she emailed Ms. Jones informing her that the City did not have an active telephone number on file to reach her.  (ECF No. 30-6, PageID #649.)  Also, Young requested a copy of Ms. Jones's resume to explore alternative placement to a vacant position as a part of the mandatory interactive process.  (*Id.*)  Ms. Jones responded to the email, directing any further communication to her union attorney.  (*Id.*, PageID #648.)

On July 27, 2021, counsel for Ms. Jones filed a second request for the following accommodations on Ms. Jones's behalf:  (1) an aerodynamic seat; (2) a ladder to help

5

Ms. Jones enter and exit the machine; (3) assistance to change the oil and to lubricate and fuel her machine; and (4) lever operator controls.  (ECF No. 28-1, PageID #288.)

Counsel contacted the City to schedule a conference to discuss the requested accommodations and to engage in the interactive process.  (ECF No. 28-3, PageID #293.)  In September 2021, an assistant law director for the City and Ms. Jones and her counsel convened a virtual meeting in response to this request in September 2021. (ECF No. 29, PageID #314; ECF No. 27, PageID #271.)  After that meeting, the City determined that it needed more information to determine whether Ms. Jones was suffering from a qualifying disability under the ADA due to conflicting medical evaluations and her responses to questions during the interactive process. (ECF No. 30-9, PageID #652; ECF No. 30-10, PageID #654.)  For this reason, the City requested that Ms. Jones submit to a third-party medical examination to determine whether she had a disability.  (ECF No. 30-9, PageID #652.)

Ms. Jones complied with the City's request—she received a functional capacity evaluation from Dr. Edward Aube, a physical therapist, on November 9, 2021.  (ECF No. 30-14, PageID #668–75.)  Based on that evaluation, Ms. Jones's requests for accommodation, and her prior medical evaluations, Dr. Scott Krupkin issued a report on November 22, 2021.  (*Id*., PageID #667.)  In his report, Dr. Krupkin indicated that Ms. Jones's impairments are likely permanent, leaving her incapable of returning to

full duty as a municipal construction equipment operator.  (*Id*.; ECF No. 25, PageID #180.)

On December 3, 2021, the City denied Ms. Jones's second request for accommodations as unreasonable because, again, granting the accommodations would require assigning work "to members of a different bargaining unit that is outside of the scope of their employment."  (ECF No. 30-15, PageID #676.)  Because the medical report determined that Ms. Jones was unable to perform the essential functions of a municipal construction equipment operator without the accommodations, the letter invited her either to request reassignment to an alternative position or to apply for disability retirement.  (*Id*., PageID #677.)  Previously, Ms. Jones stated that she did not think any other position would be appropriate for her.  (ECF No. 27, ¶ 10, PageID #272.)

### E.    Other Claims

Ms. Jones filed a claim with the Equal Employment Opportunity Commission and was issued a notice of her right to sue in December 2021.  (ECF No. 35-2, PageID #812.)  Some time after this, the City of Cleveland filled Ms. Jones's position.  (ECF No. 33-1, ¶ 4, PageID #753.)

Also, Ms. Jones filed an unrelated action in federal court against the City of Cleveland in August 2018, alleging First Amendment violations.  The case settled in 2021 for "a six-figure settlement amount" paid to Ms. Jones.  (ECF No. 36, PageID #817; *see* ECF No. 35-2, ¶ 8, PageID #812.)

## STATEMENT OF THE CASE

On January 7, 2022, Plaintiff filed suit alleging violations of the Americans with Disabilities Act, discrimination on the basis of disability, and retaliation. (ECF No. 1.)  Initially, the parties consented to the exercise of jurisdiction by Magistrate Judge Greenberg specifically (ECF No. 10), but when he recused the case was returned to the undersigned (*see* Docket, Mar. 15, 2022).  Then, the Court referred the matter to the newly assigned Magistrate Judge, Judge Parker, for mediation. (*See* Order, Mar. 21, 2023.)  When that mediation failed to resolve the dispute (Order, July 6, 2022), the case returned to active litigation before the undersigned (*see, e.g.*, ECF No. 15).  From then on, the case proceeded through discovery and other pretrial proceedings under the Court's management (*see, e.g.*, Minutes, Mar. 21, 2023).

Although the case management order that the Court entered stated that the parties consented to the exercise of jurisdiction by the Magistrate Judge (*id.*, PageID #64), that representation is a typographical error.  When the Court entered the case management order, the assigned Magistrate Judge to whom the parties consented (Judge Greenberg) had recused, the second Magistrate Judge had (appropriate) *ex parte* communications with the parties in connection with mediation, and in subsequent proceedings before the Court no party suggested that consent extended to the second Magistrate Judge.  Indeed, consent to the exercise of jurisdiction by one magistrate judge does *not* effect consent to the exercise of jurisdiction by another. *See, e.g.*, *Kalan v. City of St. Francis*, 274 F.3d 1150, 1152 (7th Cir. 2001); *Mendes Junior Int'l Co. v. M/V Sokai Maru*, 978 F. 2d 920, 922 (5th Cir. 1992); *Josie F. v.*

8

*Commissioner of Soc. Sec.*, No. 3:20-cv-515, 2023 WL 2478867, at *2 (S.D. Ohio, 2023). Based on the statutory protection for the voluntariness of consent, *see* 28 U.S.C. § 636(c)(2), the Court did not interpret the parties' prior consent to a different Magistrate Judge to extend to the second Magistrate Judge with whom they had *ex parte* communications. Therefore, the Court properly exercised jurisdiction in its management of the case.

After discovery, Defendant moved for summary judgment on each of Plaintiff's claims. (ECF No. 31.) The parties do not dispute that Plaintiff has a disability. Instead, they disagree over whether Ms. Jones's requests for accommodation were unreasonable or would cause undue hardship. Further, the City maintains that by rejecting alternative reasonable accommodations Ms. Jones was no longer a qualified individual with a disability as a matter of law. (ECF No. 31, PageID #727–28; *id.*, Page ID #737).

## ANALYSIS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In summary judgment practice, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586.

On summary judgment, the central inquiry "determin[es] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby Co.*, 477 U.S. 242, 250 (1986). Generally, a district court "will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter." *Kermavner v. Wyla, Inc.*, 250 F. Supp. 3d 325, 329 (N.D. Ohio 2017) (citing *Anderson*, 477 U.S. at 249). A district court only examines "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Tokmenko v. Metro Health Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Anderson*, 477 U.S. at 250). However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).

## I.  Failure to Accommodate and Disability Discrimination

Under the Americans with Disabilities Act, "no covered entity shall discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  Discrimination under the ADA includes failing to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  For this reason, the Court analyzes Plaintiff's claims for failure to accommodate and disability discrimination together.

Further, although Plaintiff at times describes disability discrimination and failure to accommodate as separate claims (*see* ECF No. 1, PageID #4; ECF No. 36, PageID #817), her briefing merges the two and fails to develop separate arguments. Indeed, Plaintiff goes so far as to represent that her "disability discrimination claim…is based on Defendant's failure to offer reasonable accommodation."  (ECF No. 36, PageID #821.)  In short, Plaintiff argues that Defendant failed to make reasonable accommodations for her disability by failing to provide Ms. Jones with assistance cleaning and maintaining her machine and equipment.  Defendant argues that Plaintiff cannot establish a prima facie case.

To establish a prima facie case of disability discrimination for failure to accommodate, a plaintiff must show that:  (1) she is disabled under the ADA; (2) she is otherwise qualified for the position, with or without a reasonable accommodation; (3) her employer knew or had reason to know of the disability; (4) she requested a

reasonable accommodation; and (5) the employer failed to provide the reasonable accommodation. *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015) (citing *Johnson v. Cleveland City Sch. Dist.,* 443 F. App'x 974, 982–83 (6th Cir. 2011)).

Claims involving a failure to accommodate necessarily involve direct evidence of discrimination. *Kleiber v. Honda of Am.. Mfg.*, *Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). Courts analyze such claims under the following framework:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.* at 869 (citing *Hedrick v. Western Rsrv. Care Sys.,* 355 F.3d 444, 452 (6th Cir. 2004). However, at all times Plaintiff bears the burden to propose an accommodation and to prove it is reasonable. *Tchankpa v. Ascena Retail Grp., Inc.,* 951 F.3d 805, 812 (6th Cir. 2020) (citing *Walsh v. United Parcel Serv.,* 201 F.3d 718, 725–26 (6th Cir. 2000)).

## I.A.   Plaintiff's Disability

There is no dispute that Ms. Jones has a disability under the ADA. The statute defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1). Ms. Jones's physician reported that her physical injuries limit Ms. Jones's ability to "work in a full duty capacity" and to "perform all of the essential functions of her job." (ECF No. 30-14; Page ID #667.) Defendant does not dispute this assessment and agrees

12

that Plaintiff is "entitled to a reasonable accommodation based on her medical condition." (ECF No. 31, PageID #735.)  Accordingly, Plaintiff carried her burden to establish that she is disabled within the meaning of the ADA.

### I.B.    Otherwise Qualified

Next, Plaintiff must establish that she is otherwise qualified for the position despite her disability with or without a proposed reasonable accommodation. Defendant argues that maintenance of her equipment is an essential function of the job of a municipal construction equipment operator.  (ECF No. 31, PageID #735.) Plaintiff concedes that the essential functions of her position include "[m]aintain[ing] and repair[ing] equipment."  (ECF No. 36, PageID #818.)  Also, she acknowledges that she is unable to perform the essential functions of her job without assistance maintaining the equipment.  (ECF No. 36, PageID #822.)  To carry her burden to establish her prima facie case, Plaintiff proposes what she maintains is a reasonable accommodation.  (*Id.*, PageID #823.)

Initially, a plaintiff bears the burden of showing that an accommodation appears reasonable on its face.  *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002).  Then, the defendant must show either "special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances," *id.* at 402, or that the proposed accommodation eliminates an essential job requirement. *Kleiber*, 485 F.3d at 869.  The reasonableness of the proposed accommodation presents a question of fact. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998).

Under the law of this Circuit, "[e]mployers are not required to . . . violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual." *Burns v. Coca-Cola Enters.*, Inc., 222 F.3d 247, 257 (6th Cir. 2000) (citations omitted). As a matter of law, a proposed accommodation that would do so is not a reasonable accommodation. But that is what Plaintiff seeks. She requires and seeks assistance from other employees to perform the essential functions of her job. Plaintiff argues that this proposed accommodation is nonetheless reasonable because laborers at the particular waste transfer station "regularly provided [Ms. Jones] with assistance" in the past. (ECF No. 35-2, ¶ 5, PageID #812–13; *see* ECF No. 36, PageID #824.) That Ms. Jones reports receiving assistance from other employees in the past on their own initiative to help out does not change the fact that the City could not require such assistance without violating a collective bargaining agreement. Accordingly, the accommodation Plaintiff proposes is unreasonable as a matter of law.

In any event, only a "qualified individual with a disability" can recover under the ADA. *Burns*, 222 F.3d at 256 (quoting *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 676 (7th Cir. 1998)). A person who "rejects a reasonable accommodation" is no longer considered a qualified individual. *Hedrick*, 355 F.3d at 457–58 (quoting 29 C.F.R. § 1630.9(d)). As Defendant points out (ECF No. 31, PageID #737–38), a reasonable accommodation may include "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). Here, the record shows that Plaintiff refused to engage in the interactive process to consider reassignment. Plaintiff asserts that she refused

14

to discuss alternative positions or provide her resume because Defendant would only have offered a "clerical or other low-paid position."  (ECF No. 35-2, ¶ 13, PageID #813.)  But the record lacks any evidence that Defendant offered a clerical or other low-paid position.  Further, an accommodation may still be reasonable even if it did include assignment to a lesser-paid position.  *Hedrick*, 355 F.3d at 457 (citing *Cassidy v. Detroit Edison Co.* 138 F.3d 629, 634 (6th Cir. 1998)).  On summary judgment, the record shows that Plaintiff refused to consider any other position or to cooperate in the interactive process long enough to find out whether a comparable position was available.  This record makes Plaintiff otherwise unqualified under the ADA; therefore, Defendant is entitled to a judgment as a matter of law.

## II.    Retaliation

Plaintiff also alleges that Defendant retaliated against her by determining that it was unable to accommodate her in the way she had hoped.  Whereas claims for failure to accommodate necessarily involve direct evidence, retaliation claims require an inference.  Therefore, Plaintiff must use the familiar burden-shifting framework of *McDonnell-Douglas v. Green*, 411 U.S. 792, 802–06 (1973).  *See Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 798 (6th Cir. 2006) (applying *McDonnell-Douglas* to ADA discrimination claim); *Martin v. Barnesville Exempted Vill. Sch.*, 209 F.3d 931, 934 (6th Cir. 2000) (same).  The framework shifts the burden of production between parties rather than the burden of proof.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988) (noting that "these shifting burdens are meant only to aid courts and litigants in

arranging the presentation of evidence[,]" but that the ultimate burden of proof remains "at all times with the plaintiff").

First, a plaintiff must satisfy the prima facie elements for a particular claim. But "[t]he plaintiff's burden to establish a prima facie case is light, one easily met and not onerous." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (cleaned up). "The sole function of the prima facie stage of the burden-shifting framework is to raise a rebuttable presumption of discrimination" that eliminates "the most common nondiscriminatory reasons for the employer's treatment of the plaintiff, such as the plaintiff is unqualified for the position or not a member of the protected group." *Id.* (cleaned up).

To assert a retaliation claim, a plaintiff must demonstrate that (1) she engaged in activity that the ADA protects; (2) the defendant knew that the plaintiff exercised her protected right; (3) the defendant took an adverse employment action against the plaintiff or subjected her to severe or pervasive retaliatory harassment; and (4) there was a causal connection between her protected activity and the employer's action. *Aldini*, 628 F. App'x at 352 (citing *Johnson,* 344 Fed.Appx. at 113).

## II.A.  Protected Activity and Knowledge

Plaintiff identifies two activities which she alleges amount to retaliation. (ECF No. 1, ¶ 15, PageID #4.) First, Plaintiff filed a complaint against, and ultimately settled with, same defendant in an earlier federal lawsuit (Case No. 1:18-CV-00462). (ECF No. 36, PageID #817.) That lawsuit alleged First Amendment violations for restrictions on speech and did not include allegations of discrimination. Rather than protect against "any workplace retaliation," *Rorrer v. City of* Stow, 743 F.3d 1025,

16

1046 (6th Cir. 2014), the ADA protects individuals from retaliation for "engaging in . . . activity covered by the ADA." *Id.* Protected activity under the ADA is activity that seeks to "prote[s]t or oppose a statutorily prohibited discrimination." *Tri-Cities Holdings LLC. v. Tennesee Admin. Procedures Div.*, 260 F. Supp. 3d 913, 927 (E.D. Tenn. 2017) (quoting *Rorrer*, 743 F.3d at 1046). It does not protect against retaliation unrelated to discrimination. Litigation against the City of Cleveland in an unrelated matter does not present activity that the ADA protects. Therefore, it cannot form the basis of a retaliation claim.

Second, Plaintiff sought to have Defendant recognize and accommodate her disability in a way that would allow her to return to her position as a municipal construction equipment operator. (ECF No. 1, ¶ 15, PageID #4; ECF No. 36, PageID #817.) Requesting an accommodation is protected activity. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013); *Bryson v. Regis Corp.,* 498 F.3d 561, 577 (6th Cir. 2007); *accord Baker v. Windsor Republic Doors*, 414 F. App'x 764, 777 n.8 (6th Cir. 2011) (noting that a "good-faith request for reasonable accommodations" is a "protected act" under the ADA.) Without question, this protected act also satisfies the second factor—that Defendant knew Plaintiff exercised her rights under the ADA.

### II.B.  Adverse Action

Plaintiff chose to leave her position and apply for worker's compensation when the injury occurred. She never returned to her employment as a municipal construction equipment operator, even when the BWC physical cleared her to return (ECF No. 30-11, PageID #662; *see also* ECF No. 24-1, PageID #125.) Plaintiff claims

17

that Defendant "precluded her from working since her recovery from her work-related injury" by refusing to provide her with the requested accommodations.  (ECF No. 33-3, PageID #771.)  Plaintiff does not argue that her failure to return to work amounts to constructive discharge or similar retaliatory conduct on Defendant's part. Nor does she argue that her failure to return to work can be characterized in any way as an adverse action.  Therefore, she cannot prevail on her retaliation claim.

## CONCLUSION

For the foregoing reasons, the City of Cleveland is entitled to a summary judgment on each of Plaintiff's claims.  Accordingly, the Court **GRANTS** Defendant's motion for summary judgment (ECF No. 31) and **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

Dated:  October 23, 2023

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio

18